**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| MICHAEL SCOFIELD, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EDDINGTON LAW FIRM, LLC<br><br>AND<br><br>LAWFTY, LLC<br><br>Defendants. | CIVIL ACTION FILE NO. 1:26-cv-4182<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michael Scofield (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. However, the TCPA doesn't only restrict robocalls.

3. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption

on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, she can add her number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect her own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief

to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5. The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Eddington Law Firm, LLC ("Eddington"), by and through its agent Lawfty, LLC ("Lawfty"), violated the TCPA by sending multiple telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent as well as sending such calls with illegal pre-recorded voices.

6. Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing calls.

7. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**PARTIES**

8. Plaintiff Michael Scofield is an individual residing in Colorado.

9. Defendant Eddington Law Firm, LLC is a law firm that is headquartered and has its principal place of business in this District.

10. Defendant Lawfty, LLC is a law firm lead generation, referral, and telemarketing company hired by Eddington to generate leads on its behalf with its headquarters in Washington, DC.

## JURISDICTION AND VENUE

11. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

12. This Court has general personal jurisdiction over Eddington because it is headquartered and has its principal place of business in this District. This court has specific personal jurisdiction over Lawfty because it contracted with Eddington and conducted the illegal telemarketing at issue on behalf of Eddington, a Colorado law firm, to a Colorado number.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the calls at issue were orchestrated and designed to obtain business for a law firm located in this District, and therefore a substantial part of the events giving rise to the claim occurred in this District.

## BACKGROUND

<u>The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.</u>

14. The TCPA prohibits sending multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

15. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

16. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

17. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that sends those solicitations, or "on whose behalf" such solicitations are sent. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Prerecorded Calls to Cell Phones

18. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

19. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A).

20. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

21. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

22. Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services for which the called party is charged, thus shifting the cost of automated or prerecorded messages onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

23. This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021).

24. "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes calls made using artificial or prerecorded voices pitching services. *See* FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

25. Non-consensual, non-emergency calls placed using an ATDS or an artificial or prerecorded voice violate 47 U.S.C. § 227(b)(1)(A), regardless of the purpose of the call. *Victory Phones*, 2021 WL 3007258, at *6 (rejecting claim that noncommercial survey calls were exempt and holding that "[T]he operative language of

the TCPA is unambiguous. Section 227(b)(1)(A) prohibits placing artificial and prerecorded voice calls to a variety of telephone numbers."). To hold otherwise would read the words "any person" and "any call" out of the statute. *See id.*

**FACTUAL ALLEGATIONS**

26. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

27. Plaintiff Scofield's telephone number, (970) XXX-XXXX, is a non-commercial cellular telephone number that is used for residential purposes.

28. Plaintiff Scofield uses the telephone number for his own personal, residential, and household needs and reasons.

29. The number is a residential telephone line because it is assigned to a telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

30. The number is assigned to a residential cellular telephone service.

31. Plaintiff Scofield's number has been on the National Do Not Call Registry for years since he registered it on the Registry prior to receiving the calls at issue.

32. Despite that, Mr. Scofield received at least three violative calls from both Lawfty and/or Eddington sent on behalf of and to generate leads and further sell Eddington's services for legal representation claims that would be legal services provided by Defendant Eddington.

33. Some of these calls were placed by Lawfty with prerecorded messages. For example, the Plaintiff received two calls on May 21, 2026 at 6:12 and 6:15 PM, respectively, from two different caller IDs, (719) 591-9004, and (970) 572-0148.

34. The robotic call at 6:12, which appears to have been placed using an AI chatbot using an artificial and prerecorded voice, began as follows:

> Hey, this is Sarah over at the records review office. I' m just following up on a flagged file that came across my desk today.
>
> [Plaintiff] About what?
>
> So, look, it looks like this file was tied to some recent vehicle incidents. We basically (unintelligible) just make sure folks are connected with a local support network if they need it. . . . [Plaintiff] Okay, what company are you calling from? . . . to make sure I have the right person here, have you actually been in any kind of accident in the last couple of years?

35. The call then transferred to a human representative. While the Plaintiff was speaking with the aforementioned human representative, the Plaintiff got a call from (970) 572-0148.

36. It was another robot, bearing the same voice and choppy audio as "Sarah," but this time claimed to be "Jennifer:"

> I' m Jennifer with the Accident Claim Center. We are doing a routine check on unclosed accident files today. And I' m calling about a pending compensation claim that was never finalized. I hope your day is going well so far.

37. These calls were very clearly sent using a robot or AI because the robot's speech sounded robotic and choppy, dropped out and was difficult to hear, was able to be spoken over without reacting, and the Plaintiff was then transferred after answering a few questions on the first call to someone who was obviously human.

38. The Plaintiff told the robot to stop calling him and then went back to speaking with the human agent.

39. The Plaintiff received yet another call the following day at 12:14. This call had the same script as the first call the previous day, including the robot identifying itself as "Sarah," but utilized a different voice that still sounded choppy and artificial:

> Hey, this is Sarah over at the records review office. I' m just following up on a flagged file that came across my desk today.
>
> [Plaintiff] About what?
>
> So, look, it looks like this file was tied to some recent vehicle incidents. We basically (unintelligible) just make sure folks are connected with a local support network if they need it. Just to see if I even have the the right person here, have you actually been in any kind of accident in the last couple of years?

40. During this call, the Plaintiff was again transferred from the robot to an individual representative who was obviously human.

41. Thereafter, the Plaintiff received a call from Lawfty from the caller ID (646) 956-4690 during that same call.

42. Eventually, the Plaintiff was told that "All right and our partner firm in Colorado that handles our cases in Colorado is Eddington Law Firm. . . . Eddington Law Firm, they're based in Denver."

43. Thereafter, on May 26, 2026, the Plaintiff received a call from (303) 827-7718 from Samantha who claimed to be calling from Defendant Eddington, looking for "Nathan," the name that was used on the previous call, and seeking to get additional information so that they could send over a proposed retainer.

44. Thereafter, the Plaintiff called Defendant Eddington, and Defendant claimed that they had an individual named Samantha who worked there.

45. These robot calls, except for the last two non-robotic calls, were placed directly from Defendant Lawfty to attempt to continue to sell Eddington's representation and conduct the initial intake on Eddington's behalf.

46. Upon information and belief, all the aforementioned calls were placed by Lawfty, except for the last call.

47. Upon information and belief, Defendant Eddington hired Defendant Lawfty to generate, qualify, and intake leads on its behalf, which were subsequently transferred and sold to Defendant Eddington.

48. Defendant Eddington ratified Lawfty's conduct by accepting the multiple leads and referrals generated as a result of Lawfty's illegal telemarketing conduct.

49. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

50. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

51. The FCC has instructed that sellers such as Eddington may not avoid liability by outsourcing telemarketing to agents, such as Lawfty:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC

noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (cleaned up).

52. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

53. Eddington is liable for telemarketing calls placed by Lawfty and which were ultimately placed with the purpose and aim of and using Eddington's name to generate customers for Eddington, including the Plaintiff.

54. Eddington uses telemarketing and lead generation companies like Lawfty who it authorizes to make to phone calls to potential customers, vet potential clients, and then send Eddington only the interested ones.

55. Eddington controlled the day-to-day activities of Lawfty by allowing them to work up the beginning of client intake on its behalf and then only speak with interested, pre-qualified customers that met criteria set by Eddington.

56. Eddington also could have prohibited Lawfty from using leads generated to numbers on the Do Not Call Registry and using highly-illegal prerecorded messages placed by Lawfty.

57. They did not.

58. Finally, Eddington could have terminated Lawfty once they learned of their illegal marketing conduct.

59. They did not.

60. A reasonable seller like Eddington would investigate why its agents were using illegal outbound telemarketing calls to sell its legal services to numbers which are on the National Do Not Call list, as well as using highly-illegal prerecorded calls.

61. Moreover, a reasonable seller would also investigate into why their agents were calling numbers on the Do Not Call Registry with highly illegal prerecorded messages.

62. They did not.

63. Eddington hired Lawfty without a proper investigation, and did not terminate them when they were informed of Lawfty's illegal calling conduct.

64. As such, Eddington knowingly ratified Lawfty's conduct.

65. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

66. Plaintiff never consented to receive calls from Defendants.

67. In fact, as described above, the Plaintiff explicitly revoked any purported consent to receive calls from the Defendants, but the calls continued.

68. The calls were all placed to sell Defendant Eddington's goods and services, including legal services.

69. Plaintiff's privacy has been violated by the above-described telemarketing calls.

70. The Plaintiff never provided his consent or requested the calls.

71. The aforementioned calls to the Plaintiff were unwanted.

72. The calls were non-consensual encounters.

73. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

74. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

75. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

76. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Lawfty Robocall Class**: Plaintiff and all persons within the United States: (1) to whose cellular telephone numbers (2) Lawfty, or a third party on their behalf, placed a call using artificial or pre-record messages (3) within the four years prior to the filing of the Complaint.
>
> > **Eddington Robocall Sub-Class:** Plaintiff and all persons within the United States: (1) to whose cellular telephone numbers (2) Lawfty, or a third party on their behalf, placed a call using artificial or pre-record messages (3) that advertised, or were intended to advertise, Eddington's goods and/or services (4) within the four years prior to the filing of the Complaint.
>
> **National Do Not Call Registry Class:** All persons within the United States: (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from

> Defendants or a third party acting on Defendants' behalf; (3) within a 12-month period; and (4) within the four years prior to the filing of the Complaint.

77. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the classes.

78. Excluded from the Classes are counsel, Defendants, and any entities in which Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

79. Plaintiff and all members of the Classes have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that cluttered legitimate communications.

80. This Class Action Complaint seeks injunctive relief and money damages.

81. The Classes, as defined above, are identifiable through Defendants' dialer records, other phone records, and phone number databases.

82. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds as the calls were sent in a generic fashion.

83. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

84. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

85. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

86. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

a. Whether Defendants sent multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

b. whether Defendants made calls using artificial or prerecorded voices to Plaintiff and members of the Robocall Class and Sub-Class;

c. Whether Defendants' conduct constitutes a violation of the TCPA; and

d. Whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

87. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes because the Plaintiff has no interests which are antagonistic to any member of the Classes.

88. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

89. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns

identification of Class members, which will be ascertainable from records maintained by Defendants and/or their agents.

90. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## **FIRST CAUSE OF ACTION**

### Statutory Violations of the Telephone Consumer Protection Act (47U.S.C. § 227(b)) on behalf of the Robocall Class

91. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

92. The Defendants violated the TCPA by sending or causing to be sent calls to the cellular telephones and other protected telephones of Plaintiff and members of the Robocall Class using a pre-recorded messages without their prior express written consent.

93. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

94. The Plaintiff and Robocall Class members are entitled to an award of treble damages if the Defendants' actions are found to have been knowing or willful.

95. Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Defendants from using a pre-recorded voice in the future, except for emergency purposes.

## SECOND CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act
(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

96. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

97. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

98. Defendants' violations were negligent, willful, or knowing.

99. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

100. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from sending telemarketing calls, including calls, to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendants from sending calls or calls soliciting the purchase of its goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B. Injunctive relief prohibiting Defendants from using artificial or pre-recorded voices to contact cell phones and other protected lines, except for emergency purposes, in the future;

C. That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

D. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

E. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 7th day of September, 2026.

*<u>/s/ Andrew Roman Perrong</u>*
Andrew Roman Perrong, Esq.
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com